IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ALEXIS WILLIAMS, § | |
| § | |
| Plaintiff, § | |
| § | Civil Action No. 3:24-CV-2443-D |
| VS. § | |
| § | |
| L3 HARRIS TECHNOLOGIES, INC., § | |
| § | |
| Defendant. § | |

MEMORANDUM OPINION
AND ORDER

In this action alleging a claim for race discrimination under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, defendant L3Harris Technologies, Inc. ("L3Harris") moves to dismiss under Fed. R. Civ. P. 12(b)(6). For the reasons that follow, the court denies the motion.

I

On July 12, 2022 L3Harris hired plaintiff Alexis Williams ("Williams"), an African American, for the position of Specialist, Talent Acquisition for the Integrated Mission Systems ("IMS") market segment.[1] In this position, Williams reported to Senior Manager of Talent Acquisition Jason S. Young ("Young"), who is Caucasian.

While employed by L3Harris, Williams received positive performance feedback and

---

[1] The court recounts the facts favorably to Williams as the nonmovant, "accept[ing] all well-pleaded facts as true" and "viewing them in the light most favorable to [her]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).

consistently met her key performance indicators.  During her July 2023 annual performance review, Young told Williams to "keep up the good work," and that she was doing "great."  Am. Compl. (ECF No. 12) ¶ 8.  In addition, Williams was often in the top 10 out of all 40 recruiters for number of hires completed and consistently had much higher numbers than many of the other non-African American recruiters.

In April 2023 L3Harris implemented a hiring freeze, which severely undercut the number of requisitions that recruiters were able to fill.  Shortly after it began the hiring freeze, L3Harris changed the process by which recruiters received requisitions.  Prior to the change, Williams recruited for three facilities.  If those facilities needed to recruit someone, the hiring manager would contact Williams directly and give her the requisition to fill.  After April 2023, however, if a requisition was to be filled, the hiring manager would provide it directly to Young, who would then distribute the requisition to the recruiter of his choice.  In other words, Young had complete discretionary control over Williams' workload and performance.  After the change, Williams received fewer than half the number of requisitions to fill than she had before, and she never received requisitions from other recruiters' assigned facilities.  Unlike Williams, non-African American recruiters were not forced to give up requisitions from their assigned facilities.  Williams alleges that only the performance of African American recruiters was impacted by the discretionary reassignment of requisitions from their assigned facilities.

Williams also alleges that she and the other African American recruiters did not receive the same leadership and support as their non-African American counterparts.  On

- 2 -

August 21, 2023 Young scheduled one-on-one meetings with all recruiters on his team, except for African Americans. African American team members were invited to one-on-one meetings the next day (August 22, 2023). Williams and her team members planned to ask Young why he excluded the African American team members from the August 21 meetings, but before they could do so, Young canceled the August 22 meetings and never rescheduled them. Young did not, however, cancel the August 21 one-on-one meetings.

On August 30, 2023 Williams and two other African American recruiters from Young's team—the only African American females on the team—were terminated for "reorganization and position elimination." *Id.* ¶ 13. Only one African American (a male) was retained on Young's team. Williams alleges that a disproportionate number of African American employees were laid off from the entire IMS recruiting group.

After Williams was terminated, she filed a charge of discrimination with the Texas Workforce Commission Civil Rights Division and the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued her a Notice of Right to Sue on July 10, 2024 and this lawsuit followed. In the amended complaint, which is the operative pleading, Williams alleges a claim for race discrimination under Title VII and 42 U.S.C. § 1981. L3Harris moves to dismiss under Rule 12(b)(6) on the ground that Williams has failed to state a claim for race discrimination under Title VII or § 1981. Williams opposes L3Harris's motion, which the court is deciding on the briefs, without oral argument.

II

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of plaintiff['s] . . . complaint by 'accepting all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (internal quotation marks and alteration omitted) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). To survive defendant's motion, plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting Rule 8(a)(2)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citation omitted).

III

Williams brings a claim for race discrimination under Title VII and 42 U.S.C. § 1981.[2]

A

Title VII prohibits discrimination on the basis of "race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). When a plaintiff alleges a Title VII claim of race discrimination based on circumstantial evidence, as Williams does here, the court can use the *McDonnell Douglas*[3] framework as a helpful reference when determining whether a plaintiff has plausibly alleged the ultimate elements of her claim.[4] Under this framework, the plaintiff

---

[2]"Courts use the same legal framework to analyze claims brought under Title VII and § 1981." *Fisher v. Dallas County*, 2014 WL 4797006, at *3 (N.D. Tex. Sept. 26, 2014) (Fitzwater, C.J.) (citing *DeCorte v. Jordan*, 497 F.3d 433, 437 (5th Cir. 2007)). For convenience, the court will refer in the balance of this memorandum opinion and order to Title VII because "Title VII and [§] 1981 require the same proof to establish liability." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 403 n.2 (5th Cir. 1999) (citing *Bunch v. Bullard*, 795 F.2d 384, 387 n.1 (5th Cir. 1986)).

[3]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

[4]The familiar *McDonnell Douglas* standard for evaluating employment discrimination claims is an evidentiary framework, not a pleading standard. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002). Accordingly, "a plaintiff need not make out a prima facie case of discrimination in order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013) (citing *Swierkiewicz*, 534 U.S. at 510-12); *see also, e.g.*, *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016) ("Although Chhim did not have to submit evidence to establish a prima facie case of discrimination at this stage, he had to plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make his case plausible."). To survive L3Harris's motion to dismiss, however, Williams must plausibly plead the ultimate elements of her Title VII claim. *See Chhim*, 836 F.3d at 470. And since *McDonnell Douglas* will govern when a plaintiff relies on indirect evidence of discrimination, it can be helpful to reference that framework when the court is determining whether a plaintiff has plausibly alleged the ultimate elements of her claim. *See Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019) (Title VII case) ("If a plaintiff's . . . claim depends on circumstantial

must adequately plead that (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) others similarly situated were treated more favorably. *See Harrison v. Brookhaven Sch. Dist.*, 82 F.4th 427, 429 (5th Cir. 2023) (per curiam) (citing cases). The fourth element requires that the plaintiff identify a comparator by alleging facts sufficient to demonstrate that she "was treated less favorably than others outside of [her] protected class." *Olivarez v. T-mobile USA, Inc.*, 997 F.3d 595, 600 (5th Cir. 2021) (emphasis omitted) (quoting *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 427 (5th Cir. 2017)).

B

L3Harris moves to dismiss Williams' race discrimination claim on these grounds: that the only actionable adverse employment action alleged in the amended complaint is her termination; and that Williams has not alleged any facts that link L3Harris's termination decision with any protected characteristic because, although three African American employees were terminated from Williams' team, "her argument is undermined by the fact that another African-American employee remained on Young's team." D. Mot. (ECF No. 14) at 6. The court is unpersuaded by L3Harris's arguments.

Williams has plausibly pleaded all four elements of her race discrimination claim. She alleges that she is a member of a protected class, that she was qualified for her position, and

---

evidence, he will 'ultimately have to show' that he can satisfy the *McDonnell Douglas* framework. In such cases, we have said that it can be 'helpful to reference' that framework when the court is determining whether a plaintiff has plausibly alleged the ultimate elements of the . . . claim." (quoting *Chhim*, 836 F.3d at 470-71)).

- 6 -

that she suffered an adverse employment action—i.e., L3Harris terminated her employment.[5] Regarding the fourth element, Williams asserts that in the months leading up to the layoff, "the discretionary reassignment of Plaintiff's requisitions to non-African American recruiters directly decreased her performance metrics and increased the performance metrics of non-African American recruiters," Am. Compl. (ECF No. 12) ¶ 21; that Young held one-on-one meetings with non-African American team members, but did not hold any one-on-one meetings with the African American team members[6]; that even though Williams performed as well or better than her non-African American counterparts, she was terminated, but all non-African American recruiters were permitted to retain their positions; and that L3Harris

> disproportionately fired African American employees, with 3 out of 4 African Americans on the team being fired. Before the termination Young's team was 4 African Americans out of 10-12 employees. After the termination Young's team was 1 out of 7-9 which is statistically significant. Indeed, despite African American[s] comprising approximately one third of Young's team, 100% of the recruiters laid off were African American.

*Id.* ¶ 20. These allegations are sufficient to plausibly plead a claim for race discrimination under Title VII. The fact that L3Harris retained a single African American employee after the lay-off does not "undermine" Williams' claim, at least at the Rule 12(b)(6) stage. There

---

[5]L3Harris acknowledges that Williams' termination constitutes an "actionable adverse employment action." D. Mot. (ECF No. 14) at 5.

[6]The court does not suggest that the exclusion of non-African American team members from one-on-one meetings would alone be sufficient to state a plausible claim for race discrimination. But in the context of the amended complaint, this allegation supports Williams' argument that L3Harris treated non-African American team members more favorably than African American team members.

is no requirement under Title VII that, to plead a plausible claim, a plaintiff must allege that *all* members of her protected class were subjected to the same adverse employment action. Title VII only requires that a plaintiff plead facts that enable the court to draw the reasonable inference that she was treated "less favorably than others outside of her protected class," which Williams has done.

L3Harris does not move to dismiss Williams' complaint on any other grounds. Accordingly, court denies L3Harris's Rule 12(b)(6) motion.

\* \* \*

For the reasons explained, the court denies L3Harris's Rule 12(b)(6) motion to dismiss Williams' amended complaint.

**SO ORDERED**.

February 6, 2025.

SIDNEY A. FITZWATER
SENIOR JUDGE